## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------x
| | |
|---|---|
| In re | : | Chapter 11 |
| | : | |
| **PROSPECTOR OFFSHORE** | : | **Case No. 17-_____ (___)** |
| **DRILLING S.à r.l.,** *et al.,* | : | |
| | : | **Joint Administration Requested** |
| **Debtors.**[1] | : | |

-----------------------------------------------------------x

### MOTION OF NEW DEBTORS FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF PURSUANT TO SECTIONS 105, 361, 362, 363, AND 364 OF THE BANKRUPTCY CODE

Prospector Offshore Drilling S.à r.l. ("**Prospector Parent**") and its affiliated

debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession

(collectively, the "**New Debtors**"), respectfully represent as follows in support of this motion

(this "**Motion**"):

### Relief Requested

1.      The New Debtors request entry of interim and final orders under

sections 105, 361, 362, 363, and 364 of title 11 of the United States Code (the "**Bankruptcy**

**Code**"), Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

**Rules**"), and Rule 4001-2 of the *Local Rules of Bankruptcy Practice and Procedure of the*

---

[1] The New Debtors in these chapter 11 cases, along with the last four digits of each New Debtor's federal tax identification number, as applicable, are: Prospector Offshore Drilling S.à r.l. (4427); Prospector Rig 1 Contracting Company S.à r.l. (7441); Prospector Rig 5 Contracting Company S.à r.l. (0985); and Paragon Offshore plc (in administration) (6017).  The mailing address for Prospector Offshore Drilling S.à r.l., Prospector Rig 1 Contracting Company S.à r.l., and Prospector Rig 5 Contracting Company S.à r.l. is 3151 Briarpark Drive, Suite 700, Houston, Texas 77042.  The mailing address for Paragon Offshore plc (in administration) is c/p Deloitte LLP, Four Brindleyplace, Birmingham, B1 2HZ, United Kingdom.  Neville Barry Kahn and David Philip Soden, each of Deloitte LLP, are the joint administrators of Paragon Offshore plc (in administration) (the "**Joint Administrators**"). The affairs, business and property of Paragon Offshore plc (in administration) are managed by the Joint Administrators.

*United States Bankruptcy Court for the District of Delaware* (the "**Local Rules**"): (i) authorizing the use of "**Cash Collateral**," as defined in section 363(a) of the Bankruptcy Code; (ii) providing adequate protection to the Security Agent (as defined below) for any diminution in value of its interests in the Prepetition Collateral (as defined below); (iii) scheduling of an interim hearing to consider the relief requested in the Motion; (iv) scheduling a final hearing (the "**Final Hearing**") to consider the relief requested in the Motion and approving the form of notice with respect to the Final Hearing; and (iv) granting related relief.

2.      A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**") and, pending a final hearing on the relief requested herein, on a final basis as **Exhibit B** (the "**Proposed Final Order**").

### Jurisdiction and Venue

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      Pursuant to Local Rule 9013–1(f), the New Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

RLF1 17854122V.1

## Background

### A.    General Background

5.    On February 14, 2016, Paragon Offshore plc (in administration) ("**Paragon Parent**") and certain of its affiliates (the "**First Filed Debtors**")[2] each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  On June 7, 2017, this Court entered the *Findings of Fact, Conclusions of Law and Order Confirming the Fifth Joint Chapter 11 Plan of Paragon Offshore plc and its Affiliated Debtors* (Docket No. 1614).  On July 17, 2017, the Court entered the *Order (I) Authorizing Modification of the Debtors' Fifth Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Pursuant to Section 1127(b) of the Bankruptcy Code and (II) Determining that Further Disclosure and Resolicitation of Votes Are Not Required Pursuant to Section 1127(c) of the Bankruptcy Code* (Docket No. 1775).  On July 18, 2017, the First Filed Debtors' chapter 11 plan became effective.

6.    On the date hereof (the "**Petition Date**"), each of the New Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The New Debtors are affiliates of the First Filed Debtors.  Contemporaneously herewith, the New Debtors have filed a motion requesting joint administration of these chapter 11 cases for procedural purposes only.

7.    Additional information regarding the New Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set

---

[2] The First Filed Debtors, along with the last four digits of each First Filed Debtor's federal tax identification number, as applicable, are: Paragon Offshore plc (in administration) (6017); Paragon Offshore Finance Company (6632); Paragon International Finance Company (8126); Paragon Offshore Holdings US Inc. (1960); Paragon Offshore Drilling LLC (4541); Paragon FDR Holdings Ltd. (4731); Paragon Duchess Ltd.; Paragon Offshore (Luxembourg) S.à r.l. (5897); PGN Offshore Drilling (Malaysia) Sdn. Bhd. (9238); Paragon Offshore (Labuan) Pte. Ltd. (3505); Paragon Holding SCS 2 Ltd. (4108); Paragon Asset Company Ltd. (2832); Paragon Holding SCS 1 Ltd. (4004); Paragon Offshore Leasing (Luxembourg) S.à r.l. (5936); Paragon Drilling Services 7 LLC (7882); Paragon Offshore Leasing (Switzerland) GmbH (0669); Paragon Offshore do Brasil Ltda.; Paragon Asset (ME) Ltd. (8362); Paragon Asset (UK) Ltd.; Paragon Offshore International Ltd. (6103); Paragon Offshore (North Sea) Ltd.; Paragon (Middle East) Limited (0667); Paragon Holding NCS 2 S.à r.l. (5447); Paragon Leonard Jones LLC (8826); Paragon Offshore (Nederland) B.V.; and Paragon Offshore Contracting GmbH (2832).

RLF1 17854122V.1

forth in the *Declaration of Lee M. Ahlstrom in Support of the New Debtors' Chapter 11 Petitions and First Day Relief* (the "**Ahlstrom Declaration**"), which has been filed with the Court contemporaneously herewith and is incorporated herein by reference.

**B.      The Prospector New Debtors' Secured Prepetition Indebtedness**

8.      On February 23, 2015, Paragon Parent completed an acquisition of Prospector Parent and its subsidiaries (collectively, the "**Prospector Entities**") by acquiring all of the issued and outstanding shares in Prospector Parent (the "**Prospector Acquisition**").  The Prospector Acquisition expanded Paragon Parent's drilling fleet by adding two additional high specification jackup rigs in the U.K. North Sea, Prospector 1 and Prospector 5 (collectively, the "**Rigs**").

9.      At the time of the Prospector Acquisition, two of Prospector Parent's non-Debtor subsidiaries, Prospector Rig 1 Owning Company S.à r.l. and Prospector Rig 5 Owning Company S.à r.l. (the "**Prospector Rig Owning Companies**"), owned the Rigs.  On June 3, 2015, as part of a sale-leaseback transaction (the "**Sale-Leaseback Transaction**"), the Prospector Rig Owning Companies entered into:

- the Memorandum of Agreement in Respect of Self-Elevating Drilling Unit "Prospector 1," dated June 3, 2015, between Prospector One Corporation (the "**Prospector 1 Lessor**") and Prospector Rig 1 Owning Company S.à r.l.; and

- the Memorandum of Agreement in Respect of Self-Elevating Drilling Unit "Prospector 5," dated June 3, 2015, between Prospector Five Corporation (the "**Prospector 5 Lessor**" and, together with the Prospector 1 Lessor, collectively, the "**Third Party Lessors**") and Prospector Rig 5 Owning Company S.à r.l.

4

10.     Pursuant to these agreements, the Prospector Rig Owning Companies agreed to sell the Rigs to the Third Party Lessors, which are subsidiaries of SinoEnergy Capital Management, Ltd. ("**SinoEnergy**"), for an aggregate sale price of approximately $300 million ($292 million net proceeds).  The sales of the Rigs closed on July 24, 2015.

11.     In connection with these sales, the Third Party Lessors entered into agreements to lease the Rigs to New Debtor Prospector Rig 1 Contracting Company S.à r.l. and New Debtor Prospector Rig 5 Contracting Company S.à r.l. (collectively, the "**Lessee Debtors**"). Specifically, the Third Party Lessors and the Lessee Debtors entered into the following lease agreements, each for a lease period of five years (the "**Lease Term**"):

- Lease Agreement, dated as of June 3, 2015, by and between Prospector One Corporation and New Debtor Prospector Rig 1 Contracting Company S.à r.l. (the "**Prospector 1 Lease Agreement**"); and

- Lease Agreement, dated as of June 3, 2015, by and between Prospector Five Corporation and New Debtor Prospector Rig 5 Contracting Company S.à r.l. (the "**Prospector 5 Lease Agreement**" and, together with the Prospector 1 Lease Agreement, collectively, the "**Sale-Leaseback Agreements**"),

12.     To secure obligations arising under the Sale-Leaseback Agreements, the Lessee Debtors granted security interests (the "**Prepetition Liens**") in their rights, title, and interest in the monies credited, paid, or caused to be credited to certain "Pledged Accounts" (as defined in the Pledge Agreements described below) and all proceeds to Industrial and Commercial Bank of China, New York Branch ("**ICBC**"), as security agent (the "**Security Agent**").  As additional security, Paragon Parent pledged its shares in Prospector Parent in favor of the Security Agent and Prospector Parent issued guarantees and pledged its shares in the Lessee Debtors to the Security Agent.  A list of these "Security Documents" (as defined in the Sale-Leaseback Agreements), include, among others:

5

- that certain Account Control and Pledge Agreement, dated as of July 24, 2015, by and between Prospector Rig 1 Contracting Company S.à r.l., Prospector One Corporation, and ICBC, governed by New York law (the "**Prospector 1 Pledge Agreement**");

- that certain Account Control and Pledge Agreement, dated as of July 24, 2015, by and between Prospector Rig 5 Contracting Company S.à r.l., Prospector Five Corporation, and ICBC, governed by New York law (the "**Prospector 5 Pledge Agreement**," and together with the Prospector 1 Pledge Agreement, the "**Pledge Agreements**");

- that certain Guarantee Agreement, dated as of June 3, 2015, by and between Prospector Parent and Prospector One Corporation, governed by English law;

- that certain Guarantee Agreement, dated as of June 3, 2015, by and between Prospector Parent and Prospector Five Corporation, governed by English law;

- that certain Pledge over Shares Agreement (Prospector Parent), dated as of July 24, 2015, by and between Paragon Parent, as Pledgor, and Prospector One Corporation and Prospector Five Corporation, as Pledgees, and Prospector Parent, governed by Luxembourg law;

- that certain Pledge over Shares Agreement, dated as of July 24, 2015, by and between Prospector Parent, as Pledgor, Prospector One Corporation, as Pledgee, and Prospector Rig 1 Contracting Company S.à r.l., governed by Luxembourg law; and

- that certain Pledge over Shares Agreement, dated as of July 24, 2015, by and between Prospector Parent, as Pledgor, Prospector Five Corporation, as Pledgee, and Prospector Rig 5 Contracting Company S.à r.l., governed by Luxembourg law.

13.     The Pledge Agreements provide that the Lessee Debtors may not make withdrawals from Earnings Accounts, Rental Reserve Accounts, Capex Reserve Accounts, Opex Reserve Accounts, and Dividend Lock-up Accounts (as defined in the Pledge Agreements) without the prior written consent of the Security Agent.  As of the Petition Date, there is approximately $10.63 million in the Earnings Accounts, $32.31 million in the Rental Reserve Accounts, $3 million in the Capex Reserve Accounts, and $3.31 million in the Opex Reserve Accounts.  The Lessee Debtors, Prospector Parent, and certain non-debtor subsidiaries of

Prospector Parent also own certain bank accounts that are not subject to the Pledge Agreements or other Security Documents and, as of the Petition Date, hold approximately $17 million in the aggregate.[3]

14.    The Lessee Debtors are obligated to make payments totaling approximately $373 million, in the aggregate, over the course of the Lease Term (including cash rental payments and repurchase obligations).  As of the Petition Date, the principal amount outstanding under the Sale-Leaseback Agreements is approximately $166 million in the aggregate (together with any amounts incurred or accrued but unpaid prior to the Petition Date in accordance with the Sale-Leaseback Agreements, the "**Prepetition Obligations**").

15.    The Rigs currently generate monthly revenues totaling approximately $10.5 million in the aggregate, of which approximately $3.4 million is used for monthly rental payments on the Rigs (approx. $1.3 for Prospector 1 and approx. $2.1 for Prospector 5), and, on average approximately $3.5 million is used to pay for operating expenses, leaving, on average, approximately $3.6 million for use by the Prospector Entities.

C.    **Need for Use of Prepetition Collateral**

16.    These proceedings were commenced, in large part, because the Third-Party Lessors and ICBC demanded, among other things, payment of over $30 million in purported termination fees, default interest under the Sale-Leaseback Agreements, and additional fees and expenses.  The New Debtors now request interim authority to use Cash Collateral in accordance with the terms of the Proposed Interim Order and the Proposed Final Order.

17.    The New Debtors have not had access to their Cash Collateral since the Petition Date and need funds primarily to make monthly lease payments due under the Lease

---

[3] Such bank accounts are described in greater detail in the New Debtors' first-day cash management motion filed contemporaneously herewith.

Agreements, pay operating expenses relating to the ordinary course operations of the Rigs, and pay employees and other expenditures that are critical to their continued viability and ability to reorganize their capital structure.

### Summary of Relief Requested[4]

18.    A summary of certain key terms of the proposed use of Cash Collateral is set forth below (the "**Rule 4001 Summary**").  The Rule 4001 Summary is qualified in its entirety by reference to the provisions of the Proposed Interim Order.

A.    <u>Parties with Interest in the Cash Collateral</u>.  The parties with an interest in the Cash Collateral include the New Debtors and the Security Agent.

B.    <u>Use of Cash Collateral</u>.  The New Debtors seek authority to use Cash Collateral to make monthly lease payments under the Lease Agreements, and for working capital and other general purposes in the ordinary course of their businesses, and for costs and expenses incurred in the chapter 11 cases in accordance with the terms of the Proposed Interim Order.

C.    <u>Prepetition Liens</u>.  The Prepetition Liens on the Prepetition Collateral shall remain in place.

D.    <u>Security Agent Replacement and Additional Liens</u>.  As adequate protection, the New Debtors will grant replacement liens to the Security Agent on all property and assets of the New Debtors, and all proceeds, rents, or profits thereof, that were subject to the Prepetition Liens (the "**Adequate Protection Liens**"), to secure an amount of the Prepetition Obligations equal to the aggregate diminution in the value of the Security Agent's interests in the Prepetition Collateral occurring from and after the Petition Date.

E.    <u>507(b) Priority Claim</u>.  As additional adequate protection, to the extent that the aggregate diminution in value of the Security Agent's interests in the Prepetition Collateral from and after the Petition Date, including, without limitation, resulting from the use of Cash Collateral reduces the value of the Adequate Protection Liens below the outstanding balance of the Prepetition Obligations, then the Security Agent will be granted, to the extent of the net decrease, superpriority claims under Section 507(b) of the

---

[4] Paragon Parent has no operative cash management system or cash that constitutes property of Paragon Parent's estate.  Pursuant to the chapter 11 plan, a trust contains approximately $11 million in cash was established to fund the costs and liabilities of the administration and winding down of Paragon Parent.  Accordingly, the relief requested in the Motion relates to the Prospector New Debtors.

Bankruptcy Code (the "**Superpriority Claim**"), and the Superpriority Claim shall have priority in payment over any and all administrative expense claims of any kind under the Bankruptcy Code.

**Basis for Relief Requested**

19.     The New Debtors respectfully submit that they have satisfied the standards applicable for the use of Cash Collateral.  As described above, it is vital to the success of the New Debtors' reorganization efforts that they immediately obtain access to Cash Collateral.  The preservation of the New Debtors' business and the New Debtors' ability to reorganize successfully depend heavily upon the expeditious approval of the use of Cash Collateral for general working capital purposes.  Absent this Court's approval of the interim relief sought herein, the New Debtors face a substantial risk of severe disruption to their business operations and irreparable damage to their relationships with their vendors and customers.

20.     The Court should approve the requested use of Cash Collateral because approval of the use of Cash Collateral is in the best interests of the New Debtors' estates and primarily benefits the Third Party Lessors.

**A.     Approval of Use of Cash Collateral is Appropriate**

21.     The New Debtors' request for use of Cash Collateral is for rental payments and expenses reasonably calculated to maximize the value of the New Debtors' assets. A debtor is entitled to use cash collateral that it believes prudent in the operation of its business. *See, e.g., In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985); *In re Ames Dep't Stores*, 115 B.R. 34, 36 (Bankr. S.D.N.Y. 1990).

22.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use, sell, or lease cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).  If a secured creditor

9

does not consent to the use of its cash collateral, the court can authorize the debtor-in-possession to use said cash collateral under section 363(c)(2)(B) of the Bankruptcy Code if the court determines that the debtor has provided "adequate protection" of the secured creditor's interest in the cash collateral. *See* 11 U.S.C. § 363(e). Here, the Security Agent has not consented to the proposed use of Cash Collateral because, among other things, SinoEnergy and the Third Party Lessors caused the filing of these chapter 11 cases.

23.    The New Debtors believe that the terms and conditions of their use of the Cash Collateral (including the provision of adequate protection described herein) are appropriate and reasonable, and that such adequate protection is sufficient to secure any adequate protection obligations under the circumstances. Therefore, the New Debtors submit that they should be authorized to use the Cash Collateral.

**B.     The Proposed Adequate Protection is Appropriate**

24.    To use cash collateral without the lienholder's consent and to use other property in which a creditor claims an interest, the debtor is required to provide the lienholder with adequate protection of its interest in the cash collateral and other property in which an interest is claimed.

25.    Section 363(e) of the Bankruptcy Code provides, in pertinent part, that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Examples of adequate protection are provided in section 361 of the Bankruptcy Code and include, but are not limited to: (a) lump sum or periodic cash payments to the extent that such use will result in a decrease in value of such entity's interest in the property; (b) provisions for an additional or

replacement lien to the extent that the use of the property will cause a decrease in the value of such entity's interest in the property; and (c) such other relief as will result in the realization by the entity of the indubitable equivalent of such entity's interest in the property. *See* 11 U.S.C. § 361.

26.    What constitutes adequate protection must be decided on a case-by-case basis. *See In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985). The focus of the requirement is to protect a secured creditor from the diminution in the value of its interest in the particular collateral during the period of use. *See In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("[T]he whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (internal citations omitted).

27.    Courts have found a secured creditor adequately protected where either a sufficient equity cushion in the collateral exists to protect the secured creditor, or the level of the secured creditor's collateral is not decreasing over time. *See In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984) ("Although the existence of an equity cushion as a method of adequate protection is not specifically mentioned in § 361, it is the classic form of protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court."); *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D. N.H. 1993) (finding that secured creditor was adequately protected and debtor was authorized to use cash collateral where level of collateral was not declining); *In re Phoenix Steel Corp.*, 39 B.R. 218, 224 (D. Del. 1984) ("It is clear that if a sufficient equity cushion exists [a creditor's] security would not be impaired and they would be adequately protected."). Even in those instances where its equity cushion is fluctuating, a secured creditor is

adequately protected so long as an adequate cushion remains over and above its secured claim. *See Dynaco Corp.*, 162 B.R. at 394.

28.     Nevertheless, adequate protection must be determined on a case-by-case basis, in light of the particular facts and circumstances presented, the focus being that which is required to protect a secured creditor from diminution in the value of its interest in the particular collateral during the use period.  *See In re Satcon Tech. Corp.*, 2012 Bankr. LEXIS 5812, at \*19-20 (Bankr. D. Del. Dec. 7, 2012); *In re Shaw Indus., Inc.*, 300 B.R. 861, 866 (Bankr. W.D. Pa. 2003); *In re Beker Indus. Corp.*, 58 B.R. 725, 736-37 (Bankr. S.D.N.Y. 1986).

29.     As of the Petition Date, cash on hand will total approximately $66 million, of which $49 million is subject to the Pledged Accounts in the maximum amounts required under the Prepetition Documents and approximately $17 million in unencumbered cash.  In addition, as adequate protection under sections 363(e) and 361(1)-(3) of the Bankruptcy Code, the New Debtors have agreed to provide the Security Agent with (a) the Adequate Protection Liens and (b) the Superpriority Claim.

30.     The reasons supporting the New Debtors' need to use Cash Collateral during the course of the New Debtors' cases are compelling.  It would be impossible to operate the New Debtors' businesses and conduct these cases absent authorization to use the Cash Collateral.  Unless this Court authorizes the use of the Cash Collateral, the New Debtors' operations would likely cease, resulting in adverse effects on the value of the New Debtors' estates to the severe detriment to all stakeholders.  Particularly harmed would be the employees of the New Debtors, whose employment would be terminated in the event the New Debtors are unable to use the Cash Collateral.

12

31.     The New Debtors believe that the adequate protection proposed herein to protect any diminution in value of the Security Agent's interest in the Prepetition Collateral is fair and reasonable.  Importantly, the proposed adequate protection shall only be provided to the extent there is any diminution in value to the Security Agent's interest in the Prepetition Collateral.  Accordingly, based upon the foregoing, the New Debtors respectfully request that the Court authorize the New Debtors to provide the adequate protection described above to such parties.

**C.      Approval of Interim Relief**

32.     Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than fourteen (14) days after the service of such motion.  Upon request, however, the court may conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral on an interim basis "to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing."  Fed. R. Bankr. P. 4001(b)(2).

33.     As described above, the New Debtors have an urgent and immediate need for cash in order to maintain business relationships, to make payroll, to make capital expenditures, and to satisfy other working capital and operational needs and otherwise finance their operations.  Given the immediate and irreparable harm to be suffered by the New Debtors, their estates, and their creditors absent interim relief, the New Debtors request that, pending the Final Hearing, the Court schedule an interim hearing within two (2) business days of the Petition Date, or as soon thereafter as practicable, to consider the interim relief requested in the Motion.

**D.      Request for a Final Hearing**

34.     Pursuant to Bankruptcy Rule 4001(b)(2), the New Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, but in no event later

than thirty (30) days following the Petition Date, and fix the time and date prior to the Final

Hearing for parties to file objections to the Motion.

### Request for Bankruptcy Rule 4001(a)(3) Waiver

35.     The New Debtors request a waiver of the stay of the effectiveness of the

order approving this Motion under Bankruptcy Rule 4001(a)(3).  Bankruptcy Rule 4001(a)(3)

provides, "[an] order granting a motion for relief from an automatic stay made in accordance

with Rule 4001(a)(1) is stayed until the expiration of fourteen days after entry of the order,

unless the court orders otherwise."  As set forth above, the use of Cash Collateral is essential to

prevent irreparable damage to the New Debtors' operations.  Accordingly, ample cause exists to

justify the waiver of the 14-day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent such

stay applies.

### Bankruptcy Rule 6003 Has Been Satisfied

36.     Bankruptcy Rule 6003 provides that, to the extent relief is necessary to

avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion

to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a

motion to pay all or part of a claim that arose before the filing of the petition" before 21 days

after the Petition Date.  As described herein, the New Debtors' estates would suffer immediate

and irreparable harm if the relief sought herein is not promptly granted.  Accordingly, the New

Debtors have satisfied the requirements of Bankruptcy Rule 6003, to the extent applicable.

### Request for Bankruptcy Rule 6004 Waivers

37.     The New Debtors request a waiver of the notice requirements under

Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant

to Bankruptcy Rule 6004(h).  As explained above, the relief requested herein is necessary to

14

avoid immediate and irreparable harm to the New Debtors.  Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

## Reservation of Rights

38.    Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the New Debtors; a waiver of the New Debtors' rights to dispute any claim; or an approval, assumption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the New Debtors' rights to dispute such claim subsequently.

## Notice

39.    No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the New Debtors' twenty (20) largest unsecured creditors on a consolidated basis; (iii) Clifford Chance LLP (Attn: Gervais Green, Esq. (gervais.green@cliffordchance.com), Chong Yi Ang, Esq. (chongyi.ang@cliffordchance.com), and Jennifer C. DeMarco, Esq. (jennifer.demarco@cliffordchance.com)), counsel to SinoEnergy Capital Management, Ltd., ICBC, and the Sale-Leaseback Lessors; (iv) the Internal Revenue Service; (v) the United States Attorney's Office for the District of Delaware; and (vi) any other party entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Notice Parties**").

40.     The New Debtors respectfully submit that no further notice is required. No previous request for the relief sought herein has been made by the New Debtors to this or any other court.

WHEREFORE the New Debtors respectfully request entry of the Proposed Interim Order and Proposed Final Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: July 20, 2017
         Wilmington, Delaware

*/s/ Mark D. Collins*
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Amanda R. Steele (No. 5530)
Joseph C. Barsalona II (No. 6102)
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 651-7700
Facsimile:   (302) 651-7701

-and-

WEIL, GOTSHAL & MANGES LLP
Gary T. Holtzer
Stephen A. Youngman
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

Proposed Attorneys for the Debtors
and Debtors in Possession

**EXHIBIT A**

Proposed Interim Order

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------x

In re                       :       **Chapter 11**

                           :

**PROSPECTOR OFFSHORE**   :       **Case No. 17-_____ (___)**

**DRILLING S.à r.l.,** *et al.,*    :

                           :       **Joint Administration Requested**

           **Debtors.**[1]      :       Re: Docket No. __

---------------------------------------------------------x

**INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION, (III) SCHEDULING A
FINAL HEARING, AND (IV) GRANTING RELATED RELIEF PURSUANT
TO SECTIONS 105, 361, 362, 363, AND 364 OF THE BANKRUPTCY CODE**

Upon the motion, dated July 20, 2017 (the "**Motion**"),[2] of Prospector Offshore

Drilling S.à r.l. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and

debtors in possession (collectively, the "**New Debtors**") for entry of an order (a) authorizing the

New Debtors to use Cash Collateral, (b) granting adequate protection to the Security Agent,

(c) scheduling a final hearing on the Motion pursuant to Bankruptcy Rule 4001(b), and

(d) granting related relief, as more fully set forth in the Motion; and upon consideration of the

Ahlstrom Declaration; and the Court having jurisdiction to consider the Motion and the relief

requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of*

*Reference* from the United States District Court for the District of Delaware dated February 29,

---

[1] The New Debtors in these chapter 11 cases, along with the last four digits of each New Debtor's federal tax identification number, as applicable, are: Prospector Offshore Drilling S.à r.l. (4427); Prospector Rig 1 Contracting Company S.à r.l. (7441); Prospector Rig 5 Contracting Company S.à r.l. (0985); and Paragon Offshore plc (in administration) (6017).  The mailing address for Prospector Offshore Drilling S.à r.l., Prospector Rig 1 Contracting Company S.à r.l., and Prospector Rig 5 Contracting Company S.à r.l. is 3151 Briarpark Drive, Suite 700, Houston, Texas 77042.  The mailing address for Paragon Offshore plc (in administration) is c/p Deloitte LLP, Four Brindleyplace, Birmingham, B1 2HZ, United Kingdom.  Neville Barry Kahn and David Philip Soden, each of Deloitte LLP, are the joint administrators of Paragon Offshore plc (in administration) (the "**Joint Administrators**").  The affairs, business and property of Paragon Offshore plc (in administration) are managed by the Joint Administrators.

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing to consider the relief requested in the Motion on _____, 2017; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having determined that the relief requested in the Motion is in the best interests of the New Debtors, their estates, their creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, **THE COURT HEREBY FINDS THAT**:

A.      Upon the entry of this Interim Order, the Security Agent's interest in the Cash Collateral will be adequately protected.  Such finding is made without prejudice to the right of the Security Agent to later assert that its interest in the Cash Collateral lacks adequate protection.

B.      In order to prevent immediate and irreparable harm to the estates pending the Final Hearing, the New Debtors require the use of Cash Collateral to pay, among other things, monthly lease payments due under the Lease Agreements and related working capital and operating expenses on account of the Rigs.

C.      The terms and conditions of this Interim Order are a fair and reasonable response to the New Debtors' request for use of Cash Collateral, and the entry of this Interim Order is in the best interests of the New Debtors' estates and creditors.

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The New Debtors are authorized to use Cash Collateral in accordance with and pursuant to the terms and provisions of this Interim Order.

3.      The Prepetition Liens on the Prepetition Collateral shall remain in place.

4.      As adequate protection, the New Debtors shall grant replacement liens to the Security Agent on all property and assets of the New Debtors, and all proceeds, rents, or profits thereof, that were subject to the Prepetition Liens (the "**Adequate Protection Liens**"), to secure an amount of the Prepetition Obligations equal to the aggregate diminution in the value of the Security Agent's interests in the Prepetition Collateral occurring from and after the Petition Date.

5.      As additional adequate protection, to the extent that the aggregate diminution in value of the Security Agent's interests in the Prepetition Collateral from and after the Petition Date, the Security Agent will be granted, to the extent of the net decrease, superpriority claims under section 507(b) of the Bankruptcy Code (the "**Superpriority Claim**"), and the Superpriority Claim shall have priority in payment over any and all administrative expense claims of any kind under the Bankruptcy Code.

6.      Except as modified herein and subject to the other provisions of this Interim Order and the Bankruptcy Code, the Sale-Leaseback Agreements, and the terms and provisions thereof, shall remain in full force and effect with respect to the Prepetition Obligations.  To the extent there exists any conflict between the Motion, the Sale-Leaseback Agreements, and the terms of this Interim Order, this Interim Order shall govern and control.

7.       The requirements of Bankruptcy Rule 4001(a)(3), to the extent applicable, are waived.

8.       The requirements of Bankruptcy Rule 6003(b) have been satisfied.

9.       The requirements of Bankruptcy Rule 6004(a), to the extent applicable, are waived.

10.      Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

11.      The New Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

12.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

13.      The Final Hearing shall be held on **_____, 2017 at _____ (Eastern Time)** and any objections or responses to the Motion shall be filed and served so as to be actually received on or before **4:00 p.m. (Eastern Time) on _____, 2017**.

Dated: _____, 2017
     Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

4

**EXHIBIT B**

Proposed Final Order

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **PROSPECTOR OFFSHORE** | : | **Case No. 17-_____ (___)** |
| **DRILLING S.à r.l.,** *et al.*, | : | |
| | : | **Jointly Administered** |
| **Debtors.**[1] | : | Re: Docket No. __ |

---------------------------------------------------------x

## FINAL ORDER (I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF PURSUANT TO SECTIONS 105, 361, 362, 363, AND 364 OF THE BANKRUPTCY CODE

Upon the motion, dated July 20, 2017 (the "**Motion**"),[2] of Prospector Offshore Drilling S.à r.l. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**New Debtors**") for entry of an order (a) authorizing the New Debtors to use Cash Collateral, (b) granting adequate protection to the Security Agent, (c) scheduling a final hearing on the Motion pursuant to Bankruptcy Rule 4001(b), and (d) granting related relief, as more fully set forth in the Motion; and upon consideration of the Ahlstrom Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant

---

[1] The New Debtors in these chapter 11 cases, along with the last four digits of each New Debtor's federal tax identification number, as applicable, are: Prospector Offshore Drilling S.à r.l. (4427); Prospector Rig 1 Contracting Company S.à r.l. (7441); Prospector Rig 5 Contracting Company S.à r.l. (0985); and Paragon Offshore plc (in administration) (6017). The mailing address for Prospector Offshore Drilling S.à r.l., Prospector Rig 1 Contracting Company S.à r.l., Prospector Rig 5 Contracting Company S.à r.l. is 3151 Briarpark Drive, Suite 700, Houston, Texas 77042. The mailing address for Paragon Offshore plc (in administration) is c/p Deloitte LLP, Four Brindleyplace, Birmingham, B1 2HZ, United Kingdom. Neville Barry Kahn and David Philip Soden, each of Deloitte LLP, are the joint administrators of Paragon Offshore plc (in administration) (the "**Joint Administrators**"). The affairs, business and property of Paragon Offshore plc (in administration) are managed by the Joint Administrators.

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing on the Motion on _____, 2017; and the Court having granted interim relief on the Motion on _____, 2017 (Docket No. __); and the Court having held a final hearing on the Motion on _____, 2017; and all objections to the Motion having been withdrawn, resolved or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having determined that the relief requested in the Motion is in the best interests of the New Debtors, their estates, their creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, **THE COURT HEREBY FINDS THAT**:

A.      Upon the entry of this Final Order, the Security Agent's interest in the Cash Collateral will be adequately protected.  Such finding is made without prejudice to the right of the Security Agent to later assert that its interest in the Cash Collateral lacks adequate protection.

B.      In order to prevent immediate and irreparable harm to the estates, the New Debtors require the use of Cash Collateral to pay, among other things, monthly lease payments due under the Lease Agreements and related working capital and operating expenses on account of the Rigs.

C.      The terms and conditions of this Final Order are a fair and reasonable response to the New Debtors' request for use of Cash Collateral, and the entry of this Final Order is in the best interests of the New Debtors' estates and creditors.

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is granted as set forth herein.

2.      The New Debtors are authorized to use Cash Collateral in accordance with and pursuant to the terms and provisions of this Final Order.

3.      The Prepetition Liens on the Prepetition Collateral shall remain in place.

4.      As adequate protection, the New Debtors shall grant replacement liens to the Security Agent on all property and assets of the New Debtors, and all proceeds, rents, or profits thereof, that were subject to the Prepetition Liens (the "**Adequate Protection Liens**"), to secure an amount of the Prepetition Obligations equal to the aggregate diminution in the value of the Security Agent's interests in the Prepetition Collateral occurring from and after the Petition Date.

5.      As additional adequate protection, to the extent that the aggregate diminution in value of the Security Agent's interests in the Prepetition Collateral from and after the Petition Date, the Security Agent will be granted, to the extent of the net decrease, superpriority claims under Bankruptcy Code Section 507(b) (the "**Superpriority Claim**"), and the Superpriority Claim shall have priority in payment over any and all administrative expense claims of any kind under the Bankruptcy Code.

6.      Except as modified herein and subject to the other provisions of this Final Order and the Bankruptcy Code, the Sale-Leaseback Agreements, and the terms and provisions thereof, shall remain in full force and effect with respect to the Prepetition Obligations.  To the extent there exists any conflict between the Motion, the Sale-Leaseback Agreements, and the terms of this Final Order, this Final Order shall govern and control.

RLF1 17854122V.1

7.      Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

8.      The New Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Final Order.

9.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

Dated: _____, 2017
        Wilmington, Delaware


_____
UNITED STATES BANKRUPTCY JUDGE

RLF1 17854122V.1